**FILED**

**NOVEMBER 15, 2007**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**07 C 6499**

| | |
|---|---|
| HAILEY FOGEL, | ) |
| | ) |
| ERIC FOGEL and | ) |
| | ) |
| ANGELA FOGEL, | ) |
|         Plaintiffs, | ) |
| | ) |
| v. | )  Civil Action No.: |
| | ) |
| EVANSTON NORTHWESTERN HEALTHCARE | ) |
| WELFARE PLAN HEALTH PROGRAM, and | ) |
| | ) |
| WELFARE PLAN APPEALS COMMITTEE, Its | ) |
| Plan Administrator, | ) |
|         Defendants. | ) |

**JUDGE HOLDERMAN**
**MAGISTRATE JUDGE NOLAN**

**LI**

## COMPLAINT

Plaintiffs, Hailey Fogel, a minor, and Eric and Angela Fogel, on behalf of themselves individually, and on behalf of their daughter, Hailey Fogel (collectively, "Plaintiffs"), through their attorneys, Noble & Cassano, hereby file their Complaint and allege as follows against Defendants:

## Jurisdiction and Venue

1.    Jurisdiction is based upon the matter in controversy arising under the laws of the United States, 28 U.S.C. §1331 and under 29 U.S.C. §1001, et seq. ("ERISA"). Declaratory judgment is sought pursuant to 28 U.S.C. §§2201 and 2202, and 29 U.S.C. §1132. This Court has jurisdiction over all Counts pursuant to 29 U.S.C. §1132(e).

2.    Venue is proper in this Court pursuant to 29 U.S.C. §1132(e).

**Parties and Status**

**3.**     Plaintiff, Hailey Fogel ("Hailey"), a minor born May 17, 2006, resides with her parents at 916 Glenview Road, Glenview, Illinois 60025.

**4.**     Plaintiff Eric Fogel ("Eric"), Hailey's father, resides at 916 Glenview Road, Glenview, Illinois 60025.

**5.**     Plaintiff Angela Fogel ("Angela"), Hailey's mother, resides at 916 Glenview Road, Glenview, Illinois 60025.

**6.**     Since May, 2001, Eric has been an employee of Evanston Northwestern Healthcare ("ENH").

**7.**     Evanston Northwestern Healthcare Plan Health Program ("Plan") is an employee benefit plan within the meaning of ERISA, 29 U.S.C. § 1002(3), and is a welfare plan within the meaning of ERISA, 29 U.S.C. § 1002(1), providing group health care benefits.

**8.**     ENH, with its main office at 1301 Central Street, Evanston, Illinois 60201, is the sponsor ("Sponsor") of the Plan within the meaning of ERISA, 29 U.S.C. §1002(16)(B), a fiduciary of the Plan within the meaning of ERISA, 29 U.S.C. §1002(21), and a party in interest with respect to the Plan within the meaning of ERISA, 29 U.S.C. §1002(14).

**9.**     The Plan's Welfare Plan Appeals Committee ("Committee" or "Plan Administrator"), is a fiduciary of the Plan within the meaning of ERISA, 29 U.S.C. §1002(21) and is a party in interest with respect to the Plan within the meaning of ERISA, 29 U.S.C. §1002(14).

**10.**     Employees of ENH are eligible to participate in the Plan.

**11.**     At all relevant times, the Committee was the Administrator of the Plan within the meaning of ERISA, 29 U.S.C. §1002(16)(A).

12.    The Plan is a self-insured group health program whose benefits are paid by ENH.

13.    The Committee is comprised of employees of ENH who are knowledgeable about the Plan, responsible for its administration, and informed about the sponsorship of the Plan by ENH.

14.    For several years, continuing to the present time, the Plan has covered various employees of ENH and their dependents who are participants and beneficiaries in the Plan within the meaning of ERISA, 29 U.S.C. §§ 1002(7) and (8), including Eric and Angela.

15.    Since January 1, 2007, Hailey has been a beneficiary in the Plan within the meaning of ERISA, 29 U.S.C. §1002(8), but prior to that time, the Plan Administrator did not permit her to be covered by the Plan.

## FACTS

16.    Eric has been employed by ENH at Glenbrook Hospital, an affiliate of ENH, since May 2001.

17.    Glenbrook Hospital constitutes part of ENH along with affiliates Evanston Hospital, Highland Park Hospital, ENH Medical Group, the ENH Foundation and ENH Research Institute.

18.    Eric, Angela, and their older daughter, Annabelle Fogel (collectively with Hailey, the "Fogels"), have been covered by the Plan since 2001.

19.    Angela and Annabelle have been beneficiaries under the Plan within the meaning of 29 U.S.C. § 1002(8) since 2001.

20.    From at least 2004 to the end of 2005, the Plan utilized United HealthCare Insurance Company ("United") to provide administrative services in connection with the delivery of the Plan's medical benefits.

3

21.    In the fall of 2005, ENH and the Plan Administrator announced to the Plan's participants that beginning January 1, 2006 administrative services in connection with the delivery of Plan's medical benefits would be provided by Aetna Life Insurance Company or one of its affiliates ("Aetna").

22.    Prior to 2006, the Plan had distributed to participants a summary plan description ("SPD") which described the Plan's benefits and procedures as administered by United.

23.    Beginning January 1, 2006 under the Plan's new administration by Aetna and for at least six months thereafter, the Administrator did not make available an SPD which described the Plan's procedures as administered by Aetna.

24.    At all relevant times, from 2001 to the present, Eric, as an ENH employee, maintained dependent coverage of his spouse, Angela, and their older daughter, Annabelle, as beneficiaries under the Plan ("family coverage").

25.    At all relevant times, Eric paid an additional monthly amount for such family coverage under the Plan.

26.    At all relevant times, the cost to Eric of family coverage under the Plan was the same if his covered dependents were two persons or three persons.

27.    Pursuant to Federal law, the Plan was required to automatically cover newborn dependents for the first 30 days after birth.

28.    For the first 30 days after Hailey's birth on May 17, 2006, she was automatically covered as a beneficiary of the Plan.

29.    The Plan also maintained a requirement that for a newborn to continue being covered under the Plan beyond the first 30 days after birth, the newborn had to be enrolled.

**30.**     Within the first 30 days after Hailey was born, no later than June 15, 2006, Eric placed a call to Aetna for the purpose of adding Hailey as an enrolled beneficiary of the Plan as part of the Fogels' family coverage.

**31.**     In that first call to Aetna, an Aetna representative told Eric that Hailey had been added to the Plan as a covered beneficiary and that a new insurance card would be sent to reflect Hailey's covered status.

**32.**     An internal email of Aetna confirms that Eric made contact with Aetna on or before June 15, 2006 and that Aetna attempted to issue an ID card for Hailey's coverage under the Plan.

**33.**     Following Eric's first call, Aetna and the Plan failed to provide the Fogels with enrollment forms for Hailey's coverage under the Plan within 30 days of Hailey's birth.

**34.**     On June 20, 2006, Hailey had her first doctor's visit.

**35.**     On July 18, 2006, Hailey had her second doctor's visit.

**36.**     On July 21, 2006, the Fogels received the bill for Hailey's June 20, 2006 doctor visit.

**37.**     In the week of July 24, 2006, Eric placed another call to Aetna to inquire about the doctor's bill for Hailey's June 20 doctor visit and was told that Hailey had been dropped from coverage under the Plan because ENH's Human Resources Department had not received enrollment papers for Hailey from the Fogels.

**38.**     In that same week, Eric visited the Glenbrook Hospital Human Resources Department and for the first time was given forms to fill out and a list of documents to submit in connection with Hailey's enrollment in the Plan.

39.     By letter dated July 31, 2006, Valerie Radek, representing the Plan as Manager, Benefits, informed the Fogels and other Plan participants for the first time that the Plan's SPD for the period commencing January 1, 2006 was available through ENH's intranet, and she advised participants with questions to contact Aetna.  That letter also directed participants to contact local Human Resources offices or the Benefits Department for printed copies of the Plan's booklet.

40.     On or about August 2, 2006, Eric submitted the forms and documents for Hailey's enrollment in the Plan to the Glenbrook Hospital Human Resources office and was told that he should contact Mike Anderson, Benefits Manager.

41.     Mr. Anderson served, among other things, as a representative of the Plan.

42.     On August 3, 2006, Eric spoke with Mr. Anderson and explained the facts and circumstances of Hailey's birth and enrollment in the Plan.

43.     At the August 3 meeting, Mr. Anderson told Eric that it sounded like Eric had been misled by Aetna and that in order to have Hailey covered by the Plan, Eric would have to write a letter to the Committee.

44.     Eric then wrote a letter dated August 3, 2006 to the Committee and faxed it to Mr. Anderson.

45.     In the week of August 14, 2006, Eric again spoke to Mr. Anderson to inquire about the Committee's response to his August 3 letter.

46.     On August 23, 2006, the Fogels received a letter from the Committee dated August 18, 2006 stating that Hailey would not be enrolled in the Plan.

47.     By August 31, 2006, facing medical bills for Hailey's health care, and having been told by the Committee that Hailey would not be covered by the Plan, the Fogels purchased

independent medical insurance coverage.  That insurance resulted in expenses to the Fogels of $109.35 per month for 4 months, September through December, 2006.

48.    On September 5, 2006, never having been given a copy of the Plan's current SPD, Eric visited the Glenbrook Hospital Human Resources office and was told that they did not have a copy but that Eric could print one from the Plan's website.

49.    Based on the information given him in the September 5 visit to the Glenbrook Hospital Human Resources office, Eric utilized a computer and printed the Plan's SPD which document was dated February 6, 2006 with an effective date of January 1, 2006 and a print date of July 6, 2006.

50.    By letter dated September 7, 2006, the Fogels' representative submitted a claim for Plan benefits under ERISA requesting that Hailey be enrolled in the Plan continuously from her date of birth with all medical expenses for services to Hailey paid in accordance with the terms of the Plan.  The September 7, 2006 letter also requested pursuant to ERISA §§ 104(b)(4) and 502(c) that the Fogels be given all Plan-related documents concerning Hailey's claim for coverage under the Plan.  As an alternative benefit claim, the Fogels requested that ENH pay for Hailey's medical expenses and insurance costs to the extent that those costs would not have been incurred by the Fogels if Hailey had been enrolled in the Plan.

51.    By letter dated November 21, 2006, the Plan Administrator denied the Fogels' claim and advised Plaintiffs that they "now have the right to bring a civil action" under ERISA.

52.    The Plan Administrator failed to provide the Fogels with a copy of various Plan related documents, including the Plan's Administrative Services Contract with Aetna, despite the September 7, 2006 document request.

53.    By letter dated October 2, 2006, the Fogels' representative again requested a copy of all Plan documents, including the Administrative Services Contract between Aetna and ENH.

54.    By letter dated October 10, 2006, the Plan's legal representative told the Fogels' representative that ENH had not finalized its wrap plan document "but would forward it when it is completed." The letter refused to provide the Administrative Services Contract.

55.    To the present, the Plan Administrator has never provided the Fogels with a copy of the Plan's wrap plan document or the Administrative Services Contract with Aetna.

56.    At all relevant times the Plan has used Aetna to handle certain communications with participants.

57.    At all relevant times, Plan representatives, including Aetna representatives, failed to convey accurate information to the Fogels about Hailey's enrollment and failed to provide any enrollment forms for the Fogels to use with Hailey's enrollment.

58.    The Plan Administrator failed to provide accurate information and adequate documents regarding the Plan and regarding enrollment for Hailey Fogel in violation of ERISA.

59.    The Plan Administrator further failed to provide Plan documents in response to Plaintiffs' September 7, 2006 written request, and later failed to provide Plan documents in response to Plaintiffs' October 2, 2006 letter renewing the document request, despite promising to do so in the October 10, 2006 letter of the Plan Administrator's legal counsel.

60.    Effective January 1, 2007, after the Plan's Fall 2006 open enrollment, Hailey was enrolled as a beneficiary of the Plan under the Fogels' family coverage.

61.    The Fogels have incurred expenses of approximately $2,500 which they would not have incurred if the Committee had not refused to extend Plan coverage to Hailey.

62.     Pending resolution of the question of Hailey's enrollment in the Plan, the Fogels have delayed paying certain of her medical bills that should have been paid by the Plan.

63.     The Fogels have received demands for payment of Hailey's medical bills from bill collectors.

64.     On information and belief, the Fogels' credit rating has been or will be adversely affected by the non-payment of Hailey's medical bills that should have been paid by the Plan.

65.     Plaintiffs have exhausted their administrative remedies under the Plan.

66.     By their wrongful conduct in violation of law, Defendants have left Plaintiffs with no alternative but to seek redress from the Court.

## COUNT I

### Violation of Plan's Disclosure Obligations

67.     Plaintiffs reallege each and every statement made in paragraphs 1 through 66, respectively.

68.     By failing to distribute the Plan's SPD as required by ERISA and by failing to provide the Fogels with Plan enrollment documents in timely fashion, the Committee as Plan Administrator wrongfully failed to disclose information which the Fogels needed to know to enroll Hailey in violation of ERISA.

## COUNT II

### Violation of Duty of Loyalty

69.     Plaintiffs reallege each and every statement made in paragraphs 1 through 68, respectively.

70.     By failing to disclose necessary information to the Fogels, the Committee as Plan Administrator violated its duty of exclusive interest and loyalty to Plaintiffs in violation of 29 U.S.C. §1104(a)(1).

## COUNT III

### Estoppel

**71.**    Plaintiffs reallege each and every statement made in paragraphs 1 through 70, respectively.

**72.**    Plaintiffs relied to their detriment on the Committee as Plan Administrator and on Aetna as the Plan's administrative services provider for administration of the Plan without violations of law.

**73.**    By reason of Plaintiffs' reliance on Defendants and their wrongful course of conduct, the Plan Administrator is estopped from denying Hailey Fogel full and continuous coverage under the Plan in 2006 and reimbursements in accordance with the terms of the Plan.

## COUNT IV

### Benefit Claim

**74.**    Plaintiffs reallege each and every statement made in paragraphs 1 through 73, respectively.

**75.**    Plaintiffs claim immediate payment and reimbursement of the cost of the independent insurance coverage they purchased and of the amount of Hailey's medical expenses under the Plan to the extent that such amounts would have been paid by the Plan had the Plan Administrator enrolled Hailey in 2006.

## COUNT V

### Disclosure Penalties

**76.**    Plaintiffs reallege each and every statement made in paragraphs 1 through 75, respectively.

**77.**     By reason of the Plan Administrator's failure to provide information requested by Plaintiffs and the violation of ERISA, the Plan Administrator is liable for such failure pursuant to 29 U.S.C. § 1132(c) in the amount of $110 per day.

WHEREFORE, Plaintiffs pray that the Court:

**(a)**     Enter a judgment finding that the Defendants have breached their duties under the Plan and ERISA.

**(b)**     Enter orders directing Defendants to enroll Hailey Fogel as a Plan beneficiary during the period in 2006 when they denied her coverage.

**(c)**     Determine the Fogels' losses resulting from Defendants' breaches.

**(d)**     Enter a judgment declaring that Hailey Fogel is entitled to immediate reimbursement of all amounts that would have been paid by the Plan for the period in 2006 when Defendants denied her coverage.

**(e)**     Enter an injunction requiring the Plan Administrator to write a letter to each credit reporting service that likely received adverse information concerning Hailey's medical bills in order to preserve or restore the Fogels' good credit rating.

**(f)**     Enter an injunction enjoining the Committee as Plan Administrator from failing to provide Plan SPDs and enrollment forms to other participants and beneficiaries who require such input, and requiring the Plan Administrator to distribute such Plan documents in accordance with ERISA.

**(g)**     Award Plaintiffs penalties of $110 per day for the Plan Administrator's violation of 29 U.S.C. §§ 1132(c) and 1024(b)(4) in failing to provide the Fogels with requested documents and information.

**(h)**    Award reasonable attorneys' fees and costs of the action to Plaintiffs pursuant to

29 U.S.C. §1132(g).

**(i)**    Grant such other relief as this Court may deem appropriate.

Dated: November 15, 2007

Respectfully submitted,

**ERIC, ANGELA AND HAILEY FOGEL**

By: /s/Lawrence C. Cassano
    One of Their Attorneys

Lawrence C. Cassano (ARDC # 6197440)
Kevin J. LeFevour (ARDC #6291733)
**NOBLE & CASSANO**
1979 N. Mill Street, Suite 205
Naperville, Illinois  60563
Telephone:  (630) 579-9460