**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| HAILEY FOGEL,<br>ERIC FOGEL, and<br>ANGELA FOGEL,<br><br>     Plaintiffs,<br><br>v.<br><br>EVANSTON NORTHWESTERN<br>HEALTHCARE WELFARE PLAN<br>HEALTH PROGRAM, and<br><br>WELFARE PLAN APPEALS<br>COMMITTEE,<br><br>     Defendants. | Case No. 07 C 6499<br><br>Judge Holderman<br><br>Magistrate Judge Nolan |

### DEFENDANTS' ANSWER TO COMPLAINT

Defendants, EVANSTON NORTHWESTERN HEALTHCARE WELFARE

PLAN HEALTH PROGRAM, and WELFARE PLAN APPEALS COMMITTEE

(collectively "Defendants") by and through their attorneys Seyfarth Shaw LLP, submit

this Answer to the Complaint:

### COMPLAINT ¶ 1:

Jurisdiction is based upon the matter in controversy arising under the laws of the United States, 28 U.S.C. §1331 and under 29 U.S.C. §1001, et seq. ("ERISA"). Declaratory judgment is sought pursuant to 28 U.S.C. §§2201 and 2202, and 29 U.S.C. §1132. This Court has jurisdiction over all Counts pursuant to 29 U.S.C. § 1132(e).

### ANSWER:

Defendants admit that Plaintiffs purport to bring this action under ERISA and that

this Court has jurisdiction, but deny the other allegations in paragraph 1.

**COMPLAINT ¶ 2:**

Venue is proper in this Court pursuant to 29 U.S.C. § 1132(e).

**ANSWER:**

Defendants admit that venue is proper in this Court.

**COMPLAINT ¶ 3:**

Plaintiff, Hailey Fogel ("Hailey"), a minor born May 17, 2006, resides with her parents at 916 Glenview Road, Glenview, Illinois 60025.

**ANSWER:**

Defendants lack information sufficient to form a belief as to the truth of the

allegations in paragraph 3.

**COMPLAINT ¶ 4:**

Plaintiff Eric Fogel ("Eric"), Hailey's father, resides at 916 Glenview Road, Glenview, Illinois 60025.

**ANSWER:**

Defendants admit the allegations in paragraph 4.

**COMPLAINT ¶ 5:**

Plaintiff Angela Fogel ("Angela"), Hailey's mother, resides at 916 Glenview Road, Glenview, Illinois 60025.

**ANSWER:**

Defendants lack information sufficient to form a belief as to the truth of the

allegations in paragraph 5.

**COMPLAINT ¶ 6:**

Since May, 2001, Eric has been an employee of Evanston Northwestern Healthcare ("ENH").

**ANSWER:**

Defendants admit the allegations in paragraph 6.

**COMPLAINT ¶ 7:**

Evanston Northwestern Healthcare Plan Health Program is an employee benefit plan within the meaning of ERISA, 29 U.S.C. § 1002(3), and is a welfare plan within the meaning of ERISA, 29 U.S.C. § 1002(1), providing group health care benefits.

**ANSWER:**

Defendants admit the Group Health Program maintained under the Evanston

Northwestern Healthcare Welfare Plan (hereinafter "Plan") is an employee benefit plan

within the meaning of ERISA and provides group health care benefits;  Defendants deny

the other allegations in paragraph 7.

**COMPLAINT ¶ 8:**

ENH, with its main office at 1301 Central Street, Evanston, Illinois 60201, is the sponsor ("Sponsor") of the Plan within the meaning of ERISA, 29 U.S.C. §1002(16)(13), a fiduciary of the Plan within the meaning of ERISA, 29 U.S.C. § 1002(21), and a party in interest with respect to the Plan within the meaning of ERISA, 29 U.S.C. §1002(14).

**ANSWER:**

Defendants admit the allegations in paragraph 8.

**COMPLAINT ¶ 9:**

The Plan's Welfare Plan Appeals Committee ("Committee" or "Plan Administrator"), is a fiduciary of the Plan within the meaning of ERISA, 29 U.S.C. §1002(21) and is a party in interest with respect to the Plan within the meaning of ERISA, 29 U.S.C. § 1002(14).

**ANSWER:**

Defendants deny that the Welfare Plan Appeals Committee ("Committee") is the

Plan Administrator, but admit the other allegations in paragraph 9

**COMPLAINT ¶ 10:**

Employees of ENH are eligible to participate in the Plan.

**ANSWER:**

Defendants admit that certain employees of ENH are eligible to participate in the

Plan, but deny the other allegations in paragraph 10.

**COMPLAINT ¶ 11:**

At all relevant times, the Committee was the Administrator of the Plan within the meaning of ERISA, 29 U.S.C. §1002(16)(A).

**ANSWER:**

Defendants deny the allegations in paragraph 11.

**COMPLAINT ¶ 12:**

The Plan is a self-insured group health program whose benefits are paid by ENH.

**ANSWER:**

Defendants admit the allegations contained in paragraph 12.

**COMPLAINT ¶ 13:**

The Committee is comprised of employees of ENH who are knowledgeable about the Plan, responsible for its administration, and informed about the sponsorship of the Plan by ENH.

**ANSWER:**

Defendants admit that the Committee is comprised of employees of ENH, that the

Committee is knowledgeable about the Plan and informed about the sponsorship of the

Plan by ENH;  Defendants deny the other allegations in paragraph 13.

**COMPLAINT ¶ 14:**

      For several years, continuing to the present time, the Plan has covered various employees of ENH and their dependents who are participants and beneficiaries in the Plan within the meaning of ERISA, 29 U.S.C. §§ 1002(7) and (8), including Eric and Angela.

**ANSWER:**

      Defendants admit the allegations in paragraph 14.

**COMPLAINT ¶ 15:**

      Since January 1, 2007, Hailey has been a beneficiary in the Plan within the meaning of ERISA, 29 U.S.C. § 1002(8), but prior to that time, the Plan Administrator did not permit her to be covered by the Plan.

**ANSWER:**

      Defendants admit that on January 1, 2007, Hailey Fogel was enrolled as a Late

Enrollee and is a beneficiary of the Plan, but deny the other allegations in paragraph 15.

**COMPLAINT ¶ 16:**

      Eric has been employed by ENH at Glenbrook Hospital, an affiliate of ENH, since May 2001.

**ANSWER:**

      Defendants admit the allegations in paragraph 16.

**COMPLAINT ¶ 17:**

      Glenbrook Hospital constitutes part of ENH along with affiliates Evanston Hospital, Highland Park Hospital, ENH Medical Group, the ENH Foundation and ENH Research Institute.

**ANSWER:**

      Defendants admit the allegations in paragraph 17.

**COMPLAINT ¶ 18:**

Eric, Angela, and their older daughter, Annabelle Fogel (collectively with Hailey, the "Fogels"), have been covered by the Plan since 2001.

**ANSWER:**

Defendants admit that Angela Fogel, Eric Fogel's spouse, was enrolled in the Plan on September 14, 2001, and that Eric Fogel submitted the appropriate paper work on June 26, 2001 to permanently enroll Annabelle Fogel, his dependent, who was born on June 20, 2001; Defendants deny the other allegations in paragraph 18.

**COMPLAINT ¶ 19:**

Angela and Annabelle have been beneficiaries under the Plan within the meaning of 29 U.S.C. § 1002(8) since 2001.

**ANSWER:**

Defendants admit the allegations in paragraph 19.

**COMPLAINT ¶ 20:**

From at least 2004 to the end of 2005, the Plan utilized United HealthCare Insurance Company ("United") to provide administrative services in connection with the delivery of the Plan's medical benefits.

**ANSWER:**

Defendants admit the allegations in paragraph 20.

**COMPLAINT ¶ 21:**

In the fall of 2005, ENH and the Plan Administrator announced to the Plan's participants that beginning January 1, 2006 administrative services in connection with the delivery of Plan's medical benefits would be provided by Aetna Life Insurance Company or one of its affiliates ("Aetna").

**ANSWER:**

Defendants admit the allegations in paragraph 21.

**COMPLAINT ¶ 22:**

Prior to 2006, the Plan had distributed to participants a summary plan description ("SPD") which described the Plan's benefits and procedures as administered by United.

**ANSWER:**

Defendants admit the allegations in paragraph 22.

**COMPLAINT ¶ 23:**

Beginning January 1, 2006 under the Plan's new administration by Aetna and for at least six months thereafter, the Administrator did not make available an SPD which described the Plan's procedures as administered by Aetna.

**ANSWER:**

Defendants deny the allegations in paragraph 23.

**COMPLAINT ¶ 24:**

At all relevant times, from 2001 to the present, Eric, as an ENH employee, maintained dependent coverage of his spouse, Angela, and their older daughter, Annabelle, as beneficiaries under the Plan ("family coverage").

**ANSWER:**

Defendants admit the allegations in paragraph 24.

**COMPLAINT ¶ 25:**

At all relevant times, Eric paid an additional monthly amount for such family coverage under the Plan.

**ANSWER:**

Defendants admit the allegations in paragraph 25.

**COMPLAINT ¶ 26:**

At all relevant times, the cost to Eric of family coverage under the Plan was the same if his covered dependents were two persons or three persons.

**ANSWER:**

Defendants admit the allegations in paragraph 26.

**COMPLAINT ¶ 27:**

Pursuant to Federal law, the Plan was required to automatically cover newborn dependents for the first 30 days after birth.

**ANSWER:**

Defendants admit the allegations in paragraph 27.

**COMPLAINT ¶ 28:**

For the first 30 days after Hailey's birth on May 17, 2006, she was automatically covered as a beneficiary of the Plan.

**ANSWER:**

Defendants admit the allegations in paragraph 28.

**COMPLAINT ¶ 29:**

The Plan also maintained a requirement that for a newborn to continue being covered under the Plan beyond the first 30 days after birth, the newborn had to be enrolled.

**ANSWER:**

Defendants admit the allegations in paragraph 29.

**COMPLAINT ¶ 30:**

Within the first 30 days after Hailey was born, no later than June 15, 2006, Eric placed a call to Aetna for the purpose of adding Hailey as an enrolled beneficiary of the Plan as part of the Fogels' family coverage.

**ANSWER:**

Defendants admit that within 30 days after Hailey was born, and on June 15, 2006, Eric placed a call to Aetna about enrolling the newborn;  Defendants lack information sufficient to form a belief as to the truth of the other allegations in paragraph 30.

**COMPLAINT ¶ 31:**

In that first call to Aetna, an Aetna representative told Eric that Hailey had been added to the Plan as a covered beneficiary and that a new insurance card would be sent to reflect Hailey's covered status.

**ANSWER:**

Defendants admit that Hailey Foley was automatically enrolled for the first 31 days of her life, as a newborn, and admit that on June 15, 2006, an Aetna representative investigated whether she could issue an insurance card for Hailey Fogel;  Defendants deny the other allegations in paragraph 31.

**COMPLAINT ¶ 32:**

An internal email of Aetna confirms that Eric made contact with Aetna on or before June 15, 2006 and that Aetna attempted to issue an ID card for Hailey's coverage under the Plan.

**ANSWER:**

Defendants admit that Eric made contact with Aetna on or before June 15, 2006 and that Aetna investigated whether it could issue an ID care for Hailey, but deny the other allegations in paragraph 32.

**COMPLAINT ¶ 33:**

Following Eric's first call, Aetna and the Plan failed to provide the Fogels with enrollment forms for Hailey's coverage under the Plan within 30 days of Hailey's birth.

**ANSWER:**

Defendants deny the allegations contained in paragraph 33.

**COMPLAINT ¶ 34:**

On June 20, 2006, Hailey had her first doctor's visit.

**ANSWER:**

Defendants lack information sufficient to form a belief as to the truth of the

allegations in paragraph 34.

**COMPLAINT ¶ 35:**

On July 18, 2006, Hailey had her second doctor's visit.

**ANSWER:**

Defendants admit that Hailey had a doctor visit on July 18, 2006, but lack

information sufficient to form a belief as to the truth of the other allegations in paragraph

35.

**COMPLAINT ¶ 36:**

On July 21, 2006, the Fogels received the bill for Hailey's June 20, 2006 doctor
visit.

**ANSWER:**

Defendants lack information sufficient to form a belief as to the truth of the

allegations in paragraph 36.

**COMPLAINT ¶ 37:**

In the week of July 24, 2006, Eric placed another call to Aetna to inquire about the
doctor's bill for Hailey's June 20 doctor visit and was told that Hailey had been dropped
from coverage under the Plan because ENH's Human Resources Department had not
received enrollment papers for Hailey from the Fogels.

**ANSWER:**

Defendants admit that Eric called Aetna on July 31, 2006 and that Aetna advised

that Hailey was not enrolled by Eric through his employer;  Defendants lack information

sufficient to form a belief as to whether Eric inquired about a June 20 doctor visit;

Defendants deny the other allegations in paragraph 37.

**COMPLAINT ¶ 38:**

In that same week, Eric visited the Glenbrook Hospital Human Resources Department and for the first time was given forms to fill out and a list of documents to submit in connection with Hailey's enrollment in the Plan.

**ANSWER:**

Defendants admit that after the July 31, 2006 call, Eric requested and was given

firms to fill out and submit in connection with Hailey's enrollment in the Plan, but deny

the other allegations in paragraph 38.

**COMPLAINT ¶ 39:**

By letter dated July 31, 2006, Valerie Radek, representing the Plan as Manager, Benefits, informed the Fogels and other Plan participants for the first time that the Plan's SPD for the period commencing January 1, 2006 was available through ENH's intranet, and she advised participants with questions to contact Aetna.  That letter also directed participants to contact local Human Resources offices or the Benefits Department for printed copies of the Plan's booklet.

**ANSWER:**

Defendants admit that, by letter dated July 31, 2006, Valerie Radek, Manager of

Benefits, informed Eric Fogel and the other Plan participants that the Plan's SPD for the

period commencing January 1, 2006 was available through ENH's intranet, and advised

that participants could call Aetna with questions and could obtain the Plan booklet from

local Human Resources offices;  defendants deny the other allegations in paragraph 39.

**COMPLAINT ¶ 40:**

On or about August 2, 2006, Eric submitted the forms and documents for Hailey's enrollment in the Plan to the Glenbrook Hospital Human Resources office and was told that he should contact Mike Anderson, Benefits Manager.

**ANSWER:**

Defendants admit that Eric submitted forms for Hailey's enrollment in the Plan to the Glenbrook Hospital Human Resources office, and deny that Mike Anderson was Benefits Manager on August 2, 2006; Defendants lack information sufficient to form a belief as to the truth of the other allegations in paragraph 40.

**COMPLAINT ¶ 41:**

Mr. Anderson served, among other things, as a representative of the Plan.

**ANSWER:**

Defendants admit that Mr. Anderson was the Senior Benefits Administrator, but deny the other allegations in paragraph 41.

**COMPLAINT ¶ 42:**

On August 3, 2006, Eric spoke with Mr. Anderson and explained the facts and circumstances of Hailey's birth and enrollment in the Plan.

**ANSWER:**

Defendants admit that Mr. Anderson spoke with Eric on or about August 3, 2006 on the subject of the timeliness of Hailey's enrollment in the Plan, but deny the other allegations in paragraph 42.

**COMPLAINT ¶ 43:**

At the August 3 meeting, Mr. Anderson told Eric that it sounded like Eric had been misled by Aetna and that in order to have Hailey covered by the Plan, Eric would have to write a letter to the Committee.

**ANSWER:**

Defendants admit that on or about August 3, 2006, Mr. Anderson said that Eric should write a letter to the Committee stating his case so the Committee could make a decision, but deny the other allegations in paragraph 43.

**COMPLAINT ¶ 44:**

Eric then wrote a letter dated August 3, 2006 to the Committee and faxed it to Mr. Anderson.

**ANSWER:**

Defendants admit Eric wrote and faxed a letter to the Benefit Appeals Committee on August 3, 2006, but lack information sufficient to form a belief as to the truth of the other allegations in paragraph 44.

**COMPLAINT ¶ 45:**

In the week of August 14, 2006, Eric again spoke to Mr. Anderson to inquire about the Committee's response to his August 3 letter.

**ANSWER:**

Defendants admit the allegations in paragraph 45.

**COMPLAINT ¶ 46:**

On August 23, 2006, the Fogels received a letter from the Committee dated August 18, 2006 stating that Hailey would not be enrolled in the Plan.

**ANSWER:**

Defendants admit that the Committee wrote a letter dated August 18, 2006 to Eric Fogel stating, among other things, that Eric failed to enroll Hailey in the Plan, but deny the other allegations in paragraph 46.

**COMPLAINT ¶ 47:**

By August 31, 2006, facing medical bills for Hailey's health care, and having been told by the Committee that Hailey would not be covered by the Plan, the Fogels purchased independent medical insurance coverage. That insurance resulted in expenses to the Fogels of $109.35 per month for 4 months, September through December, 2006.

**ANSWER:**

Defendants lack information sufficient to form a belief as to the truth of the

allegations in paragraph 47.

**COMPLAINT ¶ 48:**

On September 5, 2006, never having been given a copy of the Plan's current SPD, Eric visited the Glenbrook Hospital Human Resources office and was told that they did not have a copy but that Eric could print one from the Plan's website.

**ANSWER:**

Defendants lack information sufficient to form a belief whether Eric visited the

Glenbrook Hospital Human Resources office on September 5, 2006, but deny the other

allegations in paragraph 48.

**COMPLAINT ¶ 49:**

Based on the information given him in the September 5 visit to the Glenbrook Hospital Human Resources office, Eric utilized a computer and printed the Plan's SPD which document was dated February 6, 2006 with an effective date of January 1, 2006 and a print date of July 6, 2006.

**ANSWER:**

Defendants lack information sufficient to form a belief as to the truth of the

allegations in paragraph 49.

**COMPLAINT ¶ 50:**

By letter dated September 7, 2006, the Fogels' representative submitted a claim for Plan benefits under ERISA requesting that Hailey be enrolled in the Plan continuously from her date of birth with all medical expenses for services to Hailey paid

-14-

in accordance with the terms of the Plan.  The September 7, 2006 letter also requested pursuant to ERISA §§ 104(b)(4) and 502(c) that the Fogels be given all Plan-related documents concerning Hailey's claim for coverage under the Plan.  As an alternative benefit claim, the Fogels requested that ENH pay for Hailey's medical expenses and insurance costs to the extent that those costs would not have been incurred by the Fogels if Hailey had been enrolled in the Plan.

**ANSWER:**

Defendants admit the allegations in paragraph 50.

**COMPLAINT ¶ 51:**

By letter dated November 21, 2006, the Plan Administrator denied the Fogels' claim and advised Plaintiffs that they "now have the right to bring a civil action" under ERISA.

**ANSWER:**

Defendants admit that, by letter dated November 21, 2006, the Plan Administrator

denied in a second appeal the Fogel claim, and stated, among other things, that "[t]he

Participant now has the right to bring a civil action under Section 502(a) of ERISA, if he

chooses to pursue this eligibility claim;  Defendants deny the other allegations in

paragraph 51.

**COMPLAINT ¶ 52:**

The Plan Administrator failed to provide the Fogels with a copy of various Plan related documents, including the Plan's Administrative Services Contract with Aetna, despite the September 7, 2006 document request.

**ANSWER:**

Defendants deny the allegations in paragraph 52.

**COMPLAINT ¶ 53:**

By letter dated October 2, 2006, the Fogels' representative again requested a copy of all Plan documents, including the Administrative Services Contract between Aetna and ENH.

**ANSWER:**

Defendants admit that, by letter dated October 2, 2006, Lee Polk, claiming to be a

lawyer for Angela and Eric Fogel, requested a copy of Plan documents, as he has

requested by letter dated September 7, 2006 (which was responded to by letter dated

September 27, 2006 enclosing a copy of the Summary Plan Description for Option 1, in

which Eric Fogel then participated); Defendants deny the other allegations in paragraph

53.

**COMPLAINT ¶ 54:**

By letter dated October 10, 2006, the Plan's legal representative told the Fogels'
representative that ENH had not finalized its wrap plan document "but would forward it
when it is completed." The letter refused to provide the Administrative Services Contract.

**ANSWER:**

Defendants admit that the quoted language, among other language, appears in the

letter dated October 10, 2006, which also stated that ENH has not finalized its wrap plan

document and that ENH would not provide the Administrative Services Contract;

Defendants deny the other allegations in paragraph 54.

**COMPLAINT ¶ 55:**

To the present, the Plan Administrator has never provided the Fogels with a copy
of the Plan's wrap plan document or the Administrative Services Contract with Aetna.

**ANSWER:**

Defendants deny the allegations in paragraph 55.

**COMPLAINT ¶ 56:**

At all relevant times the Plan has used Aetna to handle certain communications
with participants.

**ANSWER:**

Defendants admit that Aetna communicated with participants, but deny the other allegations in paragraph 56.

**COMPLAINT ¶ 57:**

At all relevant times, Plan representatives, including Aetna representatives, failed to convey accurate information to the Fogels about Hailey's enrollment and failed to provide any enrollment forms for the Fogels to use with Hailey's enrollment.

**ANSWER:**

Defendants deny the allegations in paragraph 57.

**COMPLAINT ¶ 58:**

The Plan Administrator failed to provide accurate information and adequate documents regarding the Plan and regarding enrollment for Hailey Fogel in violation of ERISA.

**ANSWER:**

Defendants deny the allegations in paragraph 58.

**COMPLAINT ¶ 59:**

The Plan Administrator further failed to provide Plan documents in response to Plaintiffs' September 7, 2006 written request, and later failed to provide Plan documents in response to Plaintiffs' October 2, 2006 letter renewing the document request, despite promising to do so in the October 10, 2006 letter of the Plan Administrator's legal counsel.

**ANSWER:**

Defendants deny the allegations in paragraph 59.

**COMPLAINT ¶ 60:**

Effective January 1, 2007, after the Plan's Fall 2006 open enrollment, Hailey was enrolled as a beneficiary of the Plan under the Fogels' family coverage.

**ANSWER:**

Defendants admit the allegations in paragraph 60.

**COMPLAINT ¶ 61:**

The Fogels have incurred expenses of approximately $2,500 which they would not have incurred if the Committee had not refused to extend Plan coverage to Hailey.

**ANSWER:**

Defendants lack information sufficient to form a belief as to the truth of the

allegations in paragraph 61.

**COMPLAINT ¶ 62:**

Pending resolution of the question of Hailey's enrollment in the Plan, the Fogels have delayed paying certain of her medical bills that should have been paid by the Plan.

**ANSWER:**

Defendants lack information sufficient to form a belief as to the truth of the

allegations in paragraph 62.

**COMPLAINT ¶ 63:**

The Fogels have received demands for payment of Hailey's medical bills from bill collectors.

**ANSWER:**

Defendants lack information sufficient to form a belief as to the truth of the

allegations in paragraph 63.

**COMPLAINT ¶ 64:**

On information and belief, the Fogels' credit rating has been or will be adversely affected by the non-payment of Hailey's medical bills that should have been paid by the Plan.

**ANSWER:**

Defendants lack information sufficient to form a belief as to the truth of the

allegations in paragraph 64.

**COMPLAINT ¶ 65:**

Plaintiffs have exhausted their administrative remedies under the Plan.

**ANSWER:**

Defendants admit the allegations in paragraph 65.

**COMPLAINT ¶ 66:**

By their wrongful conduct in violation of law, Defendants have left Plaintiffs with
no alternative but to seek redress from the Court.

**ANSWER:**

Defendants deny the allegations in paragraph 66.

## COUNT I

**COMPLAINT ¶ 67:**

Plaintiffs reallege each and every statement made in paragraphs 1 through 66,
respectively.

**ANSWER:**

Defendants re-allege and incorporate as though set forth fully herein their Answers to

paragraphs 1 through 66.

**COMPLAINT ¶ 68:**

By failing to distribute the Plan's SPD as required by ERISA and by failing to
provide the Fogels with Plan enrollment documents in timely fashion, the Committee as
Plan Administrator wrongfully failed to disclose information which the Fogels needed to
know to enroll Hailey in violation of ERISA.

**ANSWER:**

Defendants deny the allegations in paragraph 68.

## COUNT II

**COMPLAINT ¶ 69:**

Plaintiffs reallege each and every statement made in paragraphs 1 through 68, respectively.

**ANSWER:**

Defendants re-allege and incorporate as though set forth fully herein their Answers to

paragraphs 1 through 68.

**COMPLAINT ¶ 70:**

By failing to disclose necessary information to the Fogels, the Committee as Plan Administrator violated its duty of exclusive interest and loyalty to Plaintiffs in violation of 29 U.S.C. §1104(a)(1).

**ANSWER:**

Defendants deny the allegations in paragraph 70.

## COUNT III

**COMPLAINT ¶ 71:**

Plaintiffs reallege each and every statement made in paragraphs 1 through 70, respectively.

**ANSWER:**

Defendants re-allege and incorporate as though set forth fully herein their Answers to

paragraphs 1 through 70.

**COMPLAINT ¶ 72:**

Plaintiffs relied to their detriment on the Committee as Plan Administrator and on Aetna as the Plan's administrative services provider for administration of the Plan without violations of law.

**ANSWER:**

Defendants deny the allegations in paragraph 72.

**COMPLAINT ¶ 73:**

By reason of Plaintiffs' reliance on Defendants and their wrongful course of conduct, the Plan Administrator is estopped from denying Hailey Fogel full and continuous coverage under the Plan in 2006 and reimbursements in accordance with the terms of the Plan.

**ANSWER:**

Defendants deny the allegations in paragraph 73.

**COUNT IV**

**COMPLAINT ¶ 74:**

Plaintiffs reallege each and every statement made in paragraphs 1 through 73, respectively.

**ANSWER:**

Defendants re-allege and incorporate as though set forth fully herein their Answers to

paragraphs 1 through 73.

**COMPLAINT ¶ 75:**

Plaintiffs claim immediate payment and reimbursement of the cost of the independent insurance coverage they purchased and of the amount of Hailey's medical expenses under the Plan to the extent that such amounts would have been paid by the Plan had the Plan Administrator enrolled Hailey in 2006.

**ANSWER:**

Defendants deny the allegations in paragraph 75.

## COUNT V

**COMPLAINT ¶ 76:**

Plaintiffs reallege each and every statement made in paragraphs 1 through 75, respectively.

**ANSWER:**

Defendants re-allege and incorporate as though set forth fully herein their Answers to paragraphs 1 through 75.

**COMPLAINT ¶ 77:**

By reason of the Plan Administrator's failure to provide information requested by Plaintiffs and the violation of ERISA, the Plan Administrator is liable for such failure pursuant to 29 U.S.C. § 1132(c) in the amount of $110 per day.

**ANSWER:**

Defendants deny the allegations in paragraph 77.

## AFFIRMATIVE DEFENSE TO ALL COUNTS

Angela Fogel lacks standing to assert any of her purported claims for relief under ERISA.

WHEREFORE, Defendants deny that Plaintiffs are entitled to any relief, and assert that the Complaint should be dismissed and that the Court should award Defendants their attorney's fees and costs.

**DATED: February 11, 2008**                    Respectfully submitted,

EVANSTON NORTHWESTERN
HEALTHCARE WELFARE PLAN
HEALTH PROGRAM

WELFARE PLAN APPEALS
COMMITTEE


By: s/ Yukyong Choi
                One of Their Attorneys

Mark Casciari
Yukyong Choi
SEYFARTH SHAW LLP
131 South Dearborn Street
Suite 2400
Chicago, Illinois 60603
(312) 460-5000

## <u>CERTIFICATE OF SERVICE</u>

Yukyong Choi, an attorney, for Defendants hereby certifies that on the 11th day of

February, 2008, a true and correct copy of the foregoing DEFENDANTS' ANSWER TO

PLAINTIFFS' COMPLAINT was filed electronically.  Notice of this filing will be sent to the

following parties by operation of the Court's CM/ECF system.

 Lawrence C. Cassano
 Kevin J LeFevour
 Noble & Cassano
 1979 N. Mill Street, Suite 205
 Naperville, Illinois  60563


        s/ Yukyong Choi
        Yukyong Choi